```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
HDI GLOBAL INSURANCE CO.,                                        :
                                                                 :
                        Plaintiff,                               :
                                                                 :           23-cv-6351 (LJL)
           -v-                                                   :
                                                                 :          MEMORANDUM AND
KUEHNE + NAGLE, INC.,                                            :               ORDER
                                                                 :
                        Defendant.                               :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/13/2024

LEWIS J. LIMAN, United States District Judge:

Defendant Kuehne + Nagel Inc. t/a Blue Anchor America Line ("Defendant" or "K+N") moves, pursuant to Federal Rule of Civil Procedure 56, for an order granting it partial summary judgment on its affirmative defenses, including the second, third, and ninth defenses raised in its answer. Dkt. No. 25. Plaintiff HDI Global Insurance Co. ("Plaintiff" or "HDI") opposes the motion and moves to strike the second, third, and ninth affirmative defenses. Dkt Nos. 33–34. The parties have agreed to a bench trial and are to be ready for trial by October 21, 2024. Dkt. No. 30.

For the following reasons, both motions are denied.

In brief, the dispute between the parties arises from damage caused when a container loaded with electrical wire harnesses (the "Cargo") destined for Charleston, South Carolina, fell into the water while it was being loaded for shipment at the Port of Barcelona in Spain. Defendant K+N is a non-vessel-operating common carrier ("NVOCC") that, among other things, provides ocean transportation but does not operate the vessels that engage in the ocean transportation. Dkt. No. 27 ¶ 1. At the time of the Cargo damage, K&N was providing NVOCC services for non-party Mahle Behr Charleston, Inc. ("Mahle Behr"). *Id*. at ¶ 23. Plaintiff HDI is

an insurance company that provided an insurance policy to Mahle Behr related to the Cargo. Dkt. No. 1 at 1. Four sea waybills were prepared for transportation of the Cargo (the "Sea Waybills"). Dkt. No. 27 ¶ 24.[1]

The front of the Sea Waybills contains columns which are completed for the Number of Packages and Description of Goods. The number of packages listed under the Number of Packages Column corresponds to cartons of Cargo. A representative example is as follows:

```
Place of Receipt (Multimodal Transport only)  Pre-carriage by   Port of Loading          Sea Waybill-No.
ZARAGOZA  DOOR                                BY TRUCK          BARCELONA                BANQZAZ0215303
Vessel                                        Voyage No.        Port of Transshipment    2212-0876-209.013
CHICAGO EXPRESS                               0MRBNW1MA
Port of Discharge                             Place of Delivery (Multimodal Transport only)  Movement   Freight Payable at
NEW YORK, NY                                  CHARLESTON, CFS                                CFS/CFS    DESTINATION
PARTICULARS FURNISHED BY SHIPPER - CARRIER NOT RESPONSIBLE (See Clause 7.3)
Marks and Numbers        Number of Packages   Description of Goods              Gross Weight kgs    Measurement
MAHLE                    120  PACKAGE(S)      ELECTRICAL MATERIAL               1210.00             6.912
                                              120 PACKAGES INTO
CFS:CHARLESTON,SC                             6 PALLETS

                                              HS-CODE:8544429090
                                              BANQZAZ0215303
         TOTAL           120                                                    1210.00             6.912
                                              FREIGHT COLLECT

LOADED IN CONT. : 001

OCEANFREIGHT AND CHARGES                      Prepaid     Collect    Declared Cargo Value  *** NO VALUE DECLARED ***
Rates, Weight and/or Measurement subject to correction                If Merchant enters a value, Carrier's per package limitation of liability shall
                                                                      not apply and the ad valorem rate will be charged.
```

The reverse side of the Sea Waybills contains a set of terms and conditions ("T&Cs"). The DEFINITIONS section of the T&Cs contains a definition of Package. It states:

> "Package" where a Container is loaded with more than one package or unit, the packages or other shipping units enumerated on the face of this sea waybill as packed in such Container and entered in the box on the face hereof entitled "Total

---

[1] In this case, the parties operated under the Sea Waybills rather than traditional bills of lading. The Second Circuit has stated that "A sea waybill is like a bill of lading, except that bills of lading are negotiable while waybills are not." *Royal & Sun Alliance Ins., PLC v. Ocean World Lines, Inc.*, 612 F.3d 138, 141 n.5 (2d Cir. 2010); *see also Herod's Stone Design v. Mediterranean Shipping Company S.A.*, 846 Fed App'x 37, 39 (similar). Both parties cite cases analyzing bills of lading indistinguishably and neither party has argued that the difference affects their dispute. Thus, the Court analyzes the Sea Waybills as equivalent to bills of lading.

> number of Containers or Packages received by the Carrier" are each deemed a Package.

Dkt. No. 28-7.

Section 6 of the T&Cs is titled "CARRIER'S LIABILITY."  Section 6.1(c) under that title states as follows:

> Neither the Carrier nor the Vessel shall in any event be or become liable in any amount exceeding US$500 per package or customary freight unit.  For limitation purposes under COGSA, it is agreed that the meaning of the word "package" shall be any palletised and/or unitized assemblage of cartons which has been palletised and/or unitised for the convenience of the Merchant, regardless of whether said pallet or unit is disclosed on the front hereof.

*Id*.

Under section 1304(5) of the Carriage of Goods by Sea Act ("COGSA"), a carrier shall not be "liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package . . . unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading," or the parties agree to a higher limit.  46 U.S.C. § 1304(5).  COGSA also provides that any bill of lading must show "[e]ither the number of packages or pieces, or the quantity or weight, as the case may be, as furnished in writing by the shipper."  *Id.* § 1303(3)(b).

The parties spar over the meaning of the term "package" as applied to the Sea Waybills.  The parties do not dispute that K + N's liability for the Cargo damage is limited under COGSA's $500 "per package" limitation.  46 U.S.C. § 1304(5).  However, the parties dispute whether the relevant "packages" are the 480 cartons of Cargo or the 24 pallets on which those cartons were packed.  Because COGSA does not define "package," courts have struggled with the question over time.  *See, e.g.*, *Orient Overseas Container Line, (UK) Ltd. v. Sea-Land Service, Inc.*, 122 F. Supp. 2d 481, 486 (S.D.N.Y. 2000) ("If it was the COSGA drafters' purpose to 'avoid the pains of litigation,' they must be rolling in their graves. Myriad courts have struggled with what a

3

COGSA 'package' is."); *see also Allied Intern. Am. Eagle Trading Corp. v. S.S. Yang Ming*, 672 F.2d 1055, 1057 (2d Cir. 1982).

Both parties cite to the Second Circuit's decision in *Seguros Illimani S.A. v. M/V Popi P*, 929 F.2d 89, 93 (2d Cir. 1991). In considering how to define "package" for purposes of COGSA's liability determination, that court instructed that the "primar[y] question" was "whether the bill of lading, construed as a contract, reveals the parties' agreement on the appropriate COGSA 'package.'" *Id*. at 94. The court wrote that:

> The number appearing under the heading "NO. OF PKGS." is our starting point for determining the number of packages for purposes of the COGSA per-package limitation, and unless the significance of that number is plainly contradicted by contrary evidence of the parties' intent, or unless the number refers to items that cannot qualify as "packages," it is also the ending point of our inquiry. "Package" is a term of art in the ocean shipping business, and parties to bills of lading should expect to be held to the number that appears under a column whose heading so unmistakably refers to the number of packages. That approach, evident in our more recent cases, encourages precision in filling out a key aspect of important documents, and the more consistently it is followed, the more it should minimize disputes.

*Id*. (internal citations omitted).

Plaintiff asserts that under *Seguros*, the Court's inquiry ends with the language under the heading "Number of Packages." Dkt. No. 30 at ECF p. 20. In the "Number of Packages" column in the Sea Waybills at issue here the parties listed "120 Packages," "200 Packages," "20 Packages," and "140" Packages respectively. Dkt. No. 28-7. In other words, the parties put the number of cartons in the "Number of Packages" column. The "Description of Goods" column reinforces that the cartons are the packages—a representative Sea Waybill states in that column "Electrical Material 120 Packages Into 6 Pallets." *Id*.

Defendant argues that under *Seguos*, there is plain evidence of the parties' contrary intent. The T&C's state that that the meaning of the work "package" is pallet for COGSA

4

purposes.  Dkt. No. 28-7; Dkt. No. 35 at ECF pp. 9–10.  Defendant argues that *Seguros*'s focus on the Number of Packages column is "irrelevant" in light of the T&Cs.

The Court cannot resolve the dispute between the parties based on the undisputed facts as reflected in the parties' respective Rule 56.1 statements.  Understanding what "package" means is primarily an exercise in contract interpretation to determine the parties' intent.  *See, e.g.*, *Yang Ming*, 672 F.2d at 1061 ("[T]he bill of lading expresses a contractual relationship, in which the intent of the parties is the overarching standard."); *Hercules OEM Grp. v. Zim Integrated Shipping Servs. Ltd.*, 2023 WL 6317950 (S.D.N.Y. Sept. 28, 2023) ("In this Circuit, the question of what constitutes the COGSA package is largely and in the first instance a matter of contract interpretation." (internal citations omitted)).  Plaintiff is not entitled to judgment in its favor based solely on the language of the front of the Sea Waybills.  *Seguros* states that the Number of Packages is dispositive except where that number is "plainly contradicted by contrary evidence of the parties' intent," 929 F.2d at 94, and here there is a question not adequately answered by the parties' summary judgment papers whether the language in the T&Cs "plainly" contradicts the language on the front.  By the same token, however, Defendant comes to the conclusion that the parties clearly intended to base COGSA liability on the number of pallets and not on the number of cartons only by reading the Number of Packages language out of the Sea Waybills.  It is a fundamental principle of contract interpretation that courts should strive to give meaning to the entire agreement and not render any aspects superfluous.  *See Hercules OEM*, 2023 WL 6317950, at *10 ("an interpretation that gives reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable") (internal citations omitted); *see also Certified Multi-Media Sols, Ltd. v. Preferred Contractors Insurance Company Risk Retention Grp., LLC*, 674 Fed. App'x 45, 47 (2d Cir. 2017) (general rules of

contract interpretation include construing contract to give full meaning and effect to all provisions and avoid interpretations that render clauses superfluous or meaningless). K + N seeks to ascribe meaning to the language under Number of Packages by suggesting that the number of packages under that heading was entered to satisfy United States customs regulations. Dkt. No. 26 at ECF pp. 20–21. But that raises a question of fact. K&N's Rule 30(b)(6) deponent admitted that customs regulations could have been satisfied with information under the Description of Goods heading. *See* Dkt. No. 32 at ECF p. 17; Dkt. No. 31-1 at ECF p. 5. K + N has also argued that it simply inputted the numbers given to it by the shipper, Dkt. No. 35 at ECF p. 10, but HDI has argued that K + N in fact drafted the Sea Waybill and had the last opportunity to change the Sea Waybills, Dkt. No. 32 at ECF pp. 16–17. Plaintiff has not provided evidence regarding the shipper's contemporaneous understanding of the numbers it was providing for the Number of Packages column and their importance to the question of potential damage liability. In its summary judgment papers, Defendant has not offered a satisfactory understanding that would render the Number of Packages heading anything other than surplusage if its reading of the T&Cs were adopted.[2] Neither party has provided significant evidence of industry practice.

The Court appreciates that each party would like the Court to give the Sea Waybills and COGSA an interpretation as a matter of law and that it was the promise of *Seguors* that the court be able to do so in most cases. However, where as here, the parties' competing summary judgment papers do not remove the potential ambiguity and permit a result as a matter of law,

---

[2] Judge Rochon's opinion in *Hercules OEM*, 2023 WL 6317950, does not answer the question presented by this case. There, the parties disputed whether the relevant package was the cartons holding the cargo or the pallets in which the cartons were loaded, but the front side of the bill of lading had no heading for number of packages and only referenced an attached list that referred to cartons. *Id.* at * 9. In that circumstance, the court was required to look to the terms and conditions for an understanding of the parties' intent.

and particularly when the parties have agreed to a bench trial where the issues may be further elucidated, the only answer the Court can give is to deny the motions and await that further elucidation. *See, e.g.*, *Royal Ins. Co.*, 2004 WL 369268, at *6; *Fireman's Fund Ins. Co. v. Yang Ming Marine Transport Corp.*, 2002 WL 31040340 (S.D.N.Y. Sept. 12, 2002); *Haemopharm, Inc. v. M/V MSC Indonesia*, 2002 WL 732118, at *3 (S.D.N.Y. Apr. 24, 2002).

Accordingly, the motions for partial summary judgment and to strike affirmative defenses are DENIED. The parties are directed to appear in person at a status conference on September 18, 2024 at 4 p.m. in Courtroom 15C at the 500 Pearl Street Courthouse, to discuss the timing and format of the upcoming bench trial.

The Court is respectfully directed to close Dkt. Nos. 25 and 34.

SO ORDERED.

Dated: September 13, 2024
New York, New York

_____
LEWIS J. LIMAN
United States District Judge